895 F.2d 809
 282 U.S.App.D.C. 404
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
STATE OF LOUISIANA DEPARTMENT OF HEALTH AND HUMAN RESOURCES
v.
Dr. Louis W. SULLIVAN, Secretary, et al., Appellants.
 No. 88-5361.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 12, 1990.
 
 Before MIKVA, HARRY T. EDWARDS and SILBERMAN, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. While the issues presented occasion no need for an opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 14(c) (August 1, 1987). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the judgment of the District Court appealed from in this cause is hereby affirmed for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2) (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 The issue presented in this appeal is whether the direct and indirect costs associated with the provision of outpatient physician care in state-supported "charity" hospitals under the Louisiana Medicaid program should be attributed to "physician services," or, as the United States Department of Health and Human Services ("HHS") insists, to the "outpatient hospital services" category. The district court concluded that HHS' disallowance of approximately $5.3 million in federal reimbursements to Louisiana was arbitrary and capricious. For the reasons we set out below, we affirm.
 
 
 5
 Under the Medicaid program, the federal government and the states share the expenses of furnishing medical care to indigent families and individuals. Each participating state must submit to HHS a plan detailing the medical services the state intends to provide. As long as the plan meets certain statutory requirements, HHS will approve the plan. See 42 U.S.C. Sec. 1392a. HHS may disallow the payment of its share of the Medicaid costs if the State fails to provide medical care in accordance with its plan. See 42 U.S.C. Sec. 1316(d).
 
 
 6
 In response to excessive and inappropriate use of its hospital emergency rooms, in January 1979 Louisiana proposed to limit the number of emergency room visits to three per year for each individual. HHS rejected this plan because the Department interpreted its regulations to require that any limitation on medical care be applied uniformly to all outpatient services. Louisiana then submitted a revised plan that is the center of this dispute. The state proposed to limit the Medicaid plan to "three outpatient hospital visits per recipient per calendar year." At the same time, Louisiana left in place its long-standing twelve-visit limit on "physician visits." HHS approved this amendment in December 1979. In October 1983, however, Louisiana proposed and HHS approved a plan amendment imposing the three visit limit only on emergency room care and eliminating restrictions on any other outpatient visits. In effect, HHS substantially approved the January 1979 proposal it had previously rejected.
 
 
 7
 While the three outpatient visit limit was in effect between 1981 and 1983, the parties disagreed on the proper categorization of direct and overhead costs of physician visits (such as utilities, nursing services, medical records, lab tests, X-rays, and laundry services) in the outpatient hospital setting. The doctors under the Louisiana plan billed Medicaid directly for their fees. The hospitals submitted a separate bill for their costs in maintaining the outpatient clinics. Louisiana argued that these overhead and direct costs must be allocated with "physician visits"--and thus the twelve-visit limit--since the expenses are traceable to a doctor's treatment. HHS, in contrast, contends that the federal government need not pay any of these costs after an individual's third visit to the outpatient hospital clinic. Consequently, HHS disallowed $5.3 million in federal payments. The district court, on cross-motions for summary judgment, set aside the disallowances as arbitrary and capricious.
 
 
 8
 We must note at the outset that, apart from the $5 million in reimbursements, we cannot discern any substantial federal interest in this case. HHS concedes that the federal government would have willingly paid the disputed sums to Louisiana if the state had clarified, to HHS' satisfaction, how it would allocate overhead costs. We thus are not confronted by a dispute over the scope or nature of Medicaid coverage. Instead, HHS' "you-checked-the-wrong-box" theory amounts to an insistence that admittedly legitimate medical costs when classified as "outpatient hospital services" rather than "physician services" will not be reimbursed. We further note that the tangled dispute over the allocation of these costs arose from HHS' own apparently erroneous requirement that Louisiana uniformly apply any limits on any outpatient services, a position the government reversed in 1983 by authorizing an emergency room only limitation. We frankly wonder why the Solicitor General authorized an appeal in this case.
 
 
 9
 HHS' gamesmanship over the proper categorization of medical costs and its own responsibility for the ensuing bureaucratic catfight almost obscures HHS' stated policy of deferring to a state's interpretation of its Medicaid plan, see Kansas Dep't of Social and Rehabilitative Servs., Doc. No. 88-124, Dec. No. 1026 (1989). The federal government has committed itself to accepting the state's construction of the plan as long as it is reasonable. Our responsibility as a reviewing court, then, is to decide if HHS was arbitrary and capricious in concluding that Louisiana unreasonably construed its plan.
 
 
 10
 The language of the 1979 amendment to the state plan is sparse and uninformative. The plan does not explicitly specify how costs should be allocated. Prior to the three outpatient visit limit, Louisiana apparently tracked the overhead and direct costs of its outpatient hospital clinics. Since at that time outpatient visits were unlimited, the limitations on associated costs were clearly tied to the twelve-visit physician services limit. Consequently, when the state adopted the three visit limit for outpatient care, it continued to attribute the related overhead and direct costs to physician services rather than to outpatient hospital services. And after the 1983 amendment, the state still considered the costs as physician services. Rather than a post-hoc litigation position, Louisiana has convinced us (as well as the district court) that it has consistently grouped together the physician fees and the costs associated with the provision of that care.
 
 
 11
 In private doctors' offices, HHS recognizes that overhead and other associated costs are properly reimbursable as costs attributed to the physician's treatment. Doctors in the charity clinics in Louisiana are in a slightly different position since they do not incur the facilities costs and direct expenses, but the matching principle is analogous. The state could reasonably interpret "physician visits" to include both the actual fee charged by the doctor and all the other overhead and direct costs of the care. Because a patient's treatment by a doctor at an outpatient hospital clinic counts as both a physicians visit and an outpatient hospital visit, it was permissible for Louisiana to categorize the associated costs of that visit to physicians services.
 
 
 12
 In light of the ambiguous wording of the 1979 amendment, the state's consistent allocation of these costs to physicians services, and the reasonableness of linking all of the costs associated with a doctor's treatment to "physicians visits," we not only decide that Louisiana's interpretation was permissible but also that HHS was arbitrary and capricious in not deferring to it. The judgment of the district court is
 
 
 13
 Affirmed.